

THE CITY OF NEW YORK

**MICHAEL A. CARDOZO**
*Corporation Counsel*

# LAW DEPARTMENT
100 CHURCH STREET
NEW YORK, NY 10007

**ERICA M. HABER**
phone: (212) 356-3545
fax: (212) 788-9776
email: ehaber@law.nyc.gov

August 16, 2013

**VIA ECF**
Honorable Margo K. Brodie
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

        Re:    Sean Adams v. The City of New York, et al.
                  11 CV 2567 (MKB) (SMG)

Your Honor:

        I am an Assistant Corporation Counsel in the Special Federal Litigation Division of the New York City Law Department and am assigned to represent defendants The City of New York and Undercover Officer #C0098 (hereinafter "C0098") (hereinafter referred to collectively as "Defendants") in the above-referenced matter. In accordance with this Court's Orders dated July 9, 2013, and July 24, 2013, and with this Court's instructions at the Pre-trial Conference held on July 9, 2013, and in advance of the trial of this matter, which is currently scheduled for October 15, 2013, for the reasons set forth below, I write to respectfully request that the Court: (1) allow C0098 to observe trial proceedings from a closed-circuit television in a room located within the courthouse; (2) close the courtroom to the public and plaintiff during C0098's trial testimony; (3) issue a jury instruction at the commencement of trial as to the reason C0098 is observing the trial from another room (*i.e.*, for his own personal safety) and, (4) reconsider certain rulings made at the Pre-trial Conference.

**A.**    **Measures Sought to Protect the Identity of Undercover Officer #C0098:**

        Defendants respectfully contend that defendant C0098's likeness and image are confidential and protected by the law enforcement privilege. Accordingly, Defendants respectfully request that (1) C0098 be permitted to observe the trial proceedings by closed-circuit television from another room in the courthouse; (2) the courtroom be closed to the public and plaintiff during his testimony, so that this protected information is not disclosed and C0098's safety is not inadvertently jeopardized; and, (3) the Court issue an instruction once the jury is seated to explain why C0098 is not present in the Courtroom.

The purpose of the law enforcement privilege is "to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation." *In re City of New York*, 607 F.3d 923, 941 (2d Cir. 2010) (internal citation omitted). When assessing a claim of law enforcement privilege, a court must first determine if the privilege applies, and the party asserting the privilege must show that the confidential information is protected by the privilege. *See id.* at 944, 948. "Such protected information includes information pertaining to law enforcement techniques and procedures, information that would undermine the confidentiality of sources, information that would endanger witness and law enforcement personnel or the privacy of individuals involved in investigation, and information that would otherwise interfere with an investigation." *Id.* "An investigation, however, need not be ongoing for the law enforcement privilege to apply as the ability of a law enforcement agency to conduct future investigations may be seriously impaired if certain information is revealed to the public." *Id.*

Here, C0098's likeness and identity are protected information, in that if either are revealed, his confidentiality would be undermined, his investigations could be compromised, and his life could be endangered. C0098 is an active undercover detective assigned to the NYPD's Organized Crime Control Bureau ("OCCB"). During the past year or so, he concluded an investigation involving the purchase of large amounts of narcotics and a loaded firearm. *See generally* Affidavit of Inspector John Denesopolis, annexed to Defendants' Motion for a Protective Order, dated August 13, 2012, as "Exhibit A," at Docket Report, Document Number 24. In addition, in or about August 2012, C0098 was the primary undercover officer in a case in which he was attempting to infiltrate a violent narcotic gang. He was/is also involved in daily "buy and bust operations." *Id.* This type of operation involves arrests of drug dealers by a field team of officers once an undercover officer has successfully purchased drugs from a dealer and has left the area of drug purchase. The "buy and bust operation" is an important tool in the NYPD's war on drugs, and the success of this operation demands that an undercover officer's identity remain secret. This level of secrecy is also of paramount importance to the officer's safety. Accordingly, Defendants contend the law enforcement privilege applies to C0098, his identity and his likeness. *See In re City of New York*, 607 F.3d at 951 (noting that reports contain some information that could disclose the identity of an NYPD undercover officer and stating "pulling any individual thread of an undercover operation may unravel the entire fabric that could lead to identifying an undercover officer. This could present a risk to the safety and effectiveness of that officer and would likely provide additional information about how the NYPD infiltrates organizations, thereby impeding future investigations").

To overcome the strong presumption against disclosure, a party seeking disclosure of information protected by the law enforcement privilege must show (1) his suit is non-frivolous and brought in good faith; (2) that the information sought is not available through other discovery or from other sources; and, (3) that the information sought is important to the party's case. *See id.* at 945. "Demonstrating a compelling need does not automatically entitle a litigant to privileged information. Rather disclosure is required only if that compelling need outweighs the public interest in nondisclosure." *Id.* Here, plaintiff cannot demonstrate a "compelling need" that outweighs the public interest served by protecting C0098's identity. Defendants respectfully submit that C0098's likeness is not material to this case. There is no dispute that C0098 is the witness who entered the Grand Jury room on January 19, 2011,

immediately prior to plaintiff's arrest, or who subsequently testified before the Grand Jury that indicted plaintiff on charges of tampering with a witness and intimidating a witness. Therefore, his likeness and image are of no moment.

    The Honorable Victor Marrero, United States District Judge, Southern District of New York, recognized the dangers that undercover officers face in the civil trial of *Nibbs v. Detective George Goulart, et al.*, 10 Civ. 3799 (VM). In *Nibbs*, the parties reasonably agreed prior to trial to allow defendant Undercover Officer #C0077 observe the proceedings from another room via closed-circuit television. Prior to trial, the Court granted the defendants' request for a jury instruction informing the jury as to why the defendant was observing the proceedings from another courtroom over plaintiff's objection, noting, "…I think that jurors are sophisticated people and they know that an undercover agent is undercover; and that if they somehow identify it, it is possible that it could affect their ability to perform as undercover agents. It's not unusual." *See Nibbs* Trial Tr. Sept. 19, 2011, at 9:21 – 10:15, annexed hereto as "Exhibit A." Indeed, the safety measures adopted in *Nibbs* are exactly those proposed in this matter.

    In addition, since this is a civil proceeding, plaintiff has no Sixth Amendment right to confront witnesses against him. *See Crawford v. Washington*, 531 U.S. 36, 42 (2004). *See also Hannah v. Larche*, 363 U.S. 420, 440 fn.16 (1960) (The protections afforded by the Sixth Amendment are "specifically limited to criminal prosecutions"). Accordingly, Defendants respectfully submit that plaintiff may be barred from the courtroom during C0098's testimony. Defendants suggest this measure because, in addition to the reasons set forth above, according to testimony adduced during discovery, C0098 has worked and currently does work in the precinct where plaintiff's parents reside. Plaintiff also testified that his parents' address is the address on his driver's license and where he receives his mail. It is therefore likely that plaintiff visits the area where C0098 works on a regular basis. Accordingly, plaintiff (and his family members) should not be afforded the opportunity to view C0098, and potentially compromise C0098's work and safety. This is especially so where plaintiff will not be prejudiced, since he would presumably have the opportunity to listen to a live audio feed of C0098's trial testimony from another room, and then confer with his attorney during a break in the proceedings.

    Defendants recognize that there is a substantial First Amendment right attached to civil proceedings. *See Westmoreland v. CBS, Inc.*, 752 F.2d 16, 23 (2d Cir. 1984). However, this right is qualified. *Id.* at 22. Both the Supreme Court and the Second Circuit have held that the presumption of open public trials may be overcome by an overriding interest based on findings that closure is "essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enterprise Co. v. Superior Court of California*, 464 U.S. 501, 510 (1984)). *See also*, *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 96 (2d Cir. 2004) (holding that docket sheets enjoy a presumption of openness and that the public and the media possess a qualified First Amendment right to inspect them, but that the presumption is "rebuttable upon demonstration that suppression is 'essential to preserve higher values and is narrowly tailored to serve that interest") (quoting *Press-Enterprise Co.*, 464 U.S. at 510). Defendants submit that closing the courtroom for a brief period of time – *i.e.*, only during testimony of C0098 – is a narrowly-tailored necessary measure to preserve the overriding governmental interests in (1) maintaining the continued effectiveness of current narcotics enforcement operations and long-term case investigations, and (2) protecting the safety of law enforcement agents who risk their

lives to make the streets safer for citizens. Moreover, Defendants do not seek any limitation on the public's right to examine the transcript of C0098's testimony.

Defendants respectfully submit that the case of *Ayala v. Speckard* is instructive here. *See generally Ayala v. Speckard*, 131 F.3d 62 (2d Cir. 1997). In *Ayala*, petitioners challenged their state court convictions for selling drugs, arguing that the criminal courtrooms were improperly closed during an undercover officer's testimony. The Second Circuit, sitting *en banc*, reviewed the applicable standards for courtroom closure in criminal trials, and noted that "the explicit Sixth Amendment right of the accused is complemented by an implicit, qualified First Amendment right of the press and public to access a criminal trial and that the "closure of a criminal courtroom may constitutionally occur in limited circumstances." *Id.* at 68-69 (internal quotations and citations omitted). Applying the factors set forth in *Waller v. Georgia*, 467 U.S. 39, 43 (1984), the Court held that the trial court did not err in ordering courtroom closure during an undercover officer's testimony since the officers were continuing their undercover work in the same area where petitioners had been arrested, there was a substantial state interest in maintaining the continued effectiveness of undercover officers which would be seriously prejudiced by requiring undercover officers to testify in open courtrooms, and the measure was narrowly-tailored. *See generally*, *id.* at 69-73 ("The state interest in maintaining the continued effectiveness of an undercover officer is an extremely substantial interest, and the trial judge in each case was amply justified in concluding that this interest would be seriously prejudiced by requiring the officer to testify in an open courtroom"). Defendants contend that although the *Ayala* case applies to criminal trials, the underlying analysis is the same, and that the same principles should apply herein, especially considering that the Sixth Amendment right does not attach to civil trials. *See also*, *Brown v. Artuz*, 283 F.3d 492 (2d Cir. 2002) (analyzing *Waller* factors as they apply to "buy and bust" cases under the "more deferential standard" required by the Antiterrorism and Effective Death Penalty Act and holding that the state court's decision to close the courtroom during the testimony of an undercover officer was not an "unreasonable application" of the first prong of *Waller*, since the safety of an officer is an overriding interest, and because the officer testified that he still worked in the neighborhood where the arrest took place, to the dangerous nature of undercover work, and that the courthouse was near the area where he worked; the closure was no broader than necessary since it happened only during the undercover officer's testimony; and transcript availability was a reasonable alternative to open-court testimony).

Based on the foregoing, Defendants respectfully request that (1) C0098 be permitted to observe the trial proceedings by closed-circuit television from another room in the courthouse; (2) the courtroom be closed to the public and plaintiff during his testimony; and (3) (3) the Court issue an instruction once the jury is seated to explain why C0098 is not present in the Courtroom. In the event the Court is not inclined to close the courtroom during C0098's testimony, Defendants respectfully request that the Court allow C0098 to testify behind a screen, with other security measures in place (*e.g.*, exiting and entering the courtroom from a back entrance) in order to protect his identity and safety. Defendants also respectfully request the opportunity to suggest other alternatives than the ones set forth herein, in the event this request is denied.

4

**B.     Plaintiff's Exhibit Numbers 20 through 24 Should be Precluded:**

At the Pre-trial Conference, this Court ruled that certain newspaper and internet articles – *i.e.*, Exhibit Nos. 20-24 on Plaintiff's List of Exhibits – are admissible to support his claims. *See* Joint Pre-trial Order dated April 17, 2013, at Document No. 42. Defendants respectfully contend that Plaintiff's Exhibits 20 through 24 constitute inadmissible hearsay, and are irrelevant, prejudicial and inflammatory, and accordingly, respectfully request that the Court reconsider its ruling with regard to these Exhibits. *See* Fed. R. Evid. 402, 403, 801(c), 802.

It is unclear from the Joint Pre-trial Order to which articles plaintiff refers since they are not identified by Bates number, however, Defendants have attached hereto as "Exhibit B" copies of the articles that have been exchanged throughout the course of discovery, and which we believe constitute the exhibits at issue, for the Court's review.

First, there is no evidence in the articles or the record that C0098 – or any member of the NYPD or employee of the City of New York, for that matter – have any connection to these articles or made any statements therein.[1] Accordingly, Defendants respectfully suggest that the there is a danger of unfair prejudice, confusing of the issues, and misleading the jury should these highly inflammatory articles be admitted. *See* Fed. R. Evid. 403. Second, Defendants respectfully submit that Exhibits Nos. 20 through 24 constitute inadmissible hearsay. *See e.g.*, *Strauss v. Credit Lyonnais*, 06 CV 0702 (DLI) (MDG), 2013 U.S. Dist. LEXIS 28451, *103 (E.D.N.Y. Feb. 28, 2013) ("The newspaper reports are inadmissible hearsay and cannot be relied upon") (citing *Delrosario v. City of New York*, 07 Civ. 1017 (RJS), 2010 U.S. Dist. LEXIS 20923, *18-19 (S.D.N.Y. Mar. 4, 2010)); *see also Media Alliance, Inc. v. Mirch*, 09 CV 0659 (MAD), 2010 U.S. Dist. LEXIS 6332, *3-4 (N.D.N.Y. Jan. 19, 2012) (denying plaintiff's request to introduce newspaper articles at trial as hearsay, and quoting *Delrosario*, 2010 U.S. Dist. LEXIS 20923). Third, the internet printouts sought to be introduced by plaintiff are not only hearsay but also are inherently unreliable and cumulative. *See e.g.*, *Novack v. Tucows, Inc.*, 06 CV 1909 (JFB) (ARL), 2007 U.S. Dist. LEXIS 21269, *14-19 (E.D.N.Y. Mar. 26, 2007) (granting defendants' motion to strike exhibits containing printouts of internet postings and noting that "Where postings from internet websites are not statements made by declarants testifying at trial and are offered to prove the truth of the matter asserted, such postings generally constitute hearsay under Fed. R. Evid. 801").

Based on the foregoing, Defendants respectfully request that the Court reconsider its ruling with regard to Plaintiff's Exhibits Numbers 20 through 24 and preclude plaintiff from introducing each of these exhibits at trial.

**C.     Plaintiff's Exhibit 11 Should Be Precluded:**

Defendants also respectfully request that the Court reconsider its ruling with regard to Plaintiff's Exhibit 11 – *i.e.*, the Grand Jury Synopsis Sheet – which is annexed hereto as "Exhibit C" for the Court's review. Defendants respectfully contend that this document, which was drafted by non-party Assistant District Attorney Rebecca Gibson, of the Kings County District Attorney's Office, is inadmissible hearsay and should be precluded. Fed. R.

---

[1] To the contrary, plaintiff is quoted in Plaintiff's Exhibit No. 22, the June 2, 2011 Daily News article.

Evid. 801(c), 802. Plaintiff's Exhibit 11 indicates that A.D.A. Gibson merely recorded her synopsis of what happened on the date of incident, and statements made by plaintiff to the Arresting Officer. Indeed, the document is entitled "Synopsis Sheet." Accordingly, Defendants respectfully submit that this document contains inadmissible hearsay, and should not be admitted. *See* Fed. R. Evid. 801(c), 802. Moreover, Plaintiff's Exhibit No. 11 is cumulative and likely to confuse the jury. *See* Fed. R. Evid. 403. This is especially so where A.D.A. Gibson is listed as a witness on both plaintiff's and Defendants' lists of witnesses and will be available to testify at trial as to her knowledge regarding plaintiff's criminal prosecution.

Based on the foregoing, Defendants respectfully request that the Court reconsider its ruling with regard to Plaintiff's Exhibit Number 11 and preclude plaintiff from introducing this exhibit at trial.

For all of the reasons set forth above, Defendants respectfully request that the Court grants this application in its entirety.

Thank you for your consideration herein.

Respectfully submitted,

/s/

Erica M. Haber
Assistant Corporation Counsel
Special Federal Litigation Division

cc:   Jon Norinsberg, Esq.
      (*via ECF*)